This is a titled solely for entertainment purposes only with no playin or somebodies The next case is number 06-13-42 G. S. Incorporated, A. S. Elias, A. D. Coe, B. Sheehan. Thank you. Good morning. I'd like to first address the claim from the plaintiff's claim, which is in claims 13 and 14. Before you get to that, do you mind if I redirect you in a different direction? Wherever you want to go, I'm closer. Okay, because I do want to get to that. I think it's a very important thing. Before we get there, I just want to understand if you're appealing the interpretation of detectable series, which I know is not in 13 and 14, but rather in 1 and 11. No, Your Honor, we are not. So you're not appealing detectable series. The reason I ask this is you are appealing a lot of the other claim interpretations from claim 1. That's right. So if detectable series is information which may be detected for examination of a practical number of samples, which is a quote right from the district court's interpretation, you're not appealing that. That's correct. The district court opinion also found that C.I.A.S. concedes that this final part of the SDS ticket identification number is not a detectable series. So there's a claim term you're not appealing the construction for, and it seems that you concede that the infringing devices don't contain that claim element. And so while I understand your argument is, you know, well, then they infringed 13 and 14, I just want to make sure, because it seems to me that I don't have to reach your interpretation of the various elements of claim 1 at all, because in this appeal, you have conceded non-infringement of their products on a separate term which you're not appealing. I'm afraid that's incorrect. That's incorrect. Well, tell me how— That's because of the other term that's in claim 1, the term comprise of. Okay. Well, then explain to me how that relates, because your expert, Mr. Cohen, at page 8770 of the appendix, paragraph 29, your expert says if a portion of the 18-digit number, referring to the accused device, is random, then the entire number is random, and this is true regardless of whether or not that random number was generated by a secret algorithm. The district court relies on this. It's your expert, not theirs. And he just said if part of the number is random, the whole number is random, so whether comprised of is open or closed seems to me to be irrelevant because their entire identification number is then non-detectable. Yes, Your Honor, and that is why you can say this is an infringement because of the way the claims are written, because of the way they happen inside your system. You can take the position, and you do, that this, in fact, infringes both Claim 1 and Claim 13. It would be Claim 1 requires detectable series— Comprised of, Your Honor, comprised of, which means a portion of the— But your expert said if one portion is not detectable, the whole portion is not detectable. What our expert said was that the portion is—there are two portions to that. First 14 elements, and then the last four elements. And what our expert said was those first 14 elements, and said it specifically, are indeed a detectable series, said it several times. Those first 14 elements of the machine-readable elements are indeed a detectable series, and that's where Claim 1 comes in, comprised of. The elements are— No, wait, but your expert—I agree with you. He said a portion of this number is detectable. But the problem is he also then went on to say and admit, well, if a portion of a number is not detectable, he said the entire number is not detectable. The entire number itself is indeed a pseudorandom number, and that is why you can have Claim 13— So isn't that entire number non-detectable? The entire number, but the portion is the comprised, and that's where comprised comes in, Your Honor. Comprised of. It's comprised of two. You've got the first 14 elements, and you have the last four. And what we're saying, and I agree with you, the inferences claim 13 and 14 for sure. I didn't say the inferences claim 13 and 14. But what it does also say is the language of the claim says that those machine-readable elements are comprised of, and it lists one of the things they're comprised of, one of the things it's comprised of is the detectable series. And in fact, in that SDS system, the first 14 elements are indeed a detectable series. But your expert really doesn't say that, because he says if a portion of it's not detectable, the whole thing is not detectable. You can't say it's a number, right? It's a number. It's not two separate parts that are fed into a system separately and handled separately. It's one number. It just happens to be 18 digits. And they created those 18 digits in such a way that a portion of them wouldn't be detectable, you know, to avoid counterfeiting, right? Isn't that... That is part, but as we pointed out in the brief, and I do want to refer, I'm afraid I've got to get this page, I do want to refer to that, in that same declaration, what the expert was saying, in the previous declaration also, what the expert was saying is that you have a number, and it is made up of a detectable portion. And it's not really a number. I want to get away from the word number here. I want to get to the word machine-readable elements. Because it is machine-readable elements that is comprised of a detectable series. But in your case, it's just a number, 18 digits. Whatever it may be, but it's machine-readable. It's 18 elements. And the point being that 14 of those 18 elements are indeed a detectable series. We pointed out in our brief, as did our expert, how you can very simply look at... and realize quickly that those 14 elements are a detectable series. Then when you say, is the overall number, can you detect the overall number, essentially the answer is no. But the claim is speaking of a detectable series comprised of a detectable series. Meaning that some, at least some, maybe all, but at least some of the elements, machine-readable elements, are a detectable series. That's where the word comprised of comes in. Just as if it had said comprised of a detectable series. But ultimately the district court judge found, and I think this is fact, correct me if I'm wrong, that their product didn't infringe. And he specifically cites to your expert and trial transcript admonitions that when a portion of a number is random and therefore not detectable, the whole number is random and therefore not detectable. So he didn't construe detectable series different. You're not appealing it. So the only thing we're left with in that regard, with regard to Claim 1, is do we think there's insubstantial evidence to support his fact-finding with regard to when one number is not detectable, the whole thing is not. If I may, Your Honor, there was one other premise for the decision. The other premise for the decision was that the word comprised of those words require one to, in other words, a limitation, require one to look at all 18 of the elements. That's where the word comprised of becomes important. His decision is premised on that, an issue of law. That's what that decision on Claim 1 is premised on. Once he says comprised of has to mean all 18 elements, as opposed to lesser than the 18 elements. Once he says that, then he says you have to look at the whole thing. That is in fact, Your Honor, why in the oral argument, when he raised this for the first time, it was not raised by the other side. As far as the other side was concerned, comprised of was not a word of limitation because they certainly didn't argue it. They argued everything else. He raised it for the first time at the oral argument. When he said that, when his Honor said, well, comprised of is a word of limitation, so I have to consider all 18 elements. That is when I said, on behalf of science, that you consider all 18 elements. Let's just say, for the sake of this conversation, we agree that comprised of and comprising have the same connotations that perhaps there may be other components in the system. That still doesn't resolve all of the issues. No, Your Honor. It resolves the issue with respect to Claim 1, putting aside this issue of multi-part versus not multi-part. That's another issue we haven't yet taken. But if you take just the issue of comprised of, and then you look at what the claim says, that the machine readable element is comprised of, there is indeed a detectable series of 14 elements in that machine readable element. Therefore, the machine readable is in fact comprised of 14 detectable element series. Maybe. There is a heap of faith right there. That therefore, one goes outside of the specification because of the use of comprised as opposed to consistent. And that is where I think that is your weakest point. One does not, with all due respect, I don't think one goes outside the specification once there is comprised of because one reads the specification and two things one finds. You find, for example, that one of the suggested codes to use are alphanumeric codes. Alphanumeric codes are the digits, which would be a detectable series, and letters, two parts. It specifically says that. Likewise, it specifically talks about having error correction portions of the code, parity check portions of the code. That is entirely consistent with the idea of comprised of as not being limited. Because the specification itself actually describes instances and environments in which the code itself is made up of different parts having different characteristics. So that is why comprised of is consistent with the specification. So once you take that and say, okay, comprised of is consistent with the specification, comprised of being open-ended, not limited, then one reads the claim and one sees, yes, it is comprised of detectable series, 14 of the 18 elements. That does then raise the next issue, however. And the next issue is the question of whether the phrase unique, unique identifying information, whether that is somehow limited as the district court limited it to be talking about, as he put it, he used the phrase multi-types or multi-parts, and therefore excluding something which is not serial number alone, something which is not random alone. That is what leads to this. We get to that aspect of it, having looked at comprised of, recognized from the specification, comprised of is not a limit as well as a common understanding of that type of phrase. So that permits, that aspect of it does permit in claim one, the first 14 elements to be detectable series, and the last 14 to be considered random. Then what happens, then the district court says, aha, but we still have this issue of unique authorized information. Unique authorized information, the court concluded, recognized it has a plain meaning, information associated with each element, unique to that object and authorized by the system, but then added another exclusion onto it, and said that it can't be multi-type or multi-part, so that the term excludes information other than serial information or randomly selected information alone. Did that, now what was the basis for that exclusion? The basis for that exclusion was an implication. An implication, that's all it was, found in a re-examination. It wasn't even an implication about the claims. It was an implication that the court found about how science described this, the operation of the Shoshone reference. Now your Honor, even taking, even if there were such an implication, which probably to the moment there was not, an implication certainly is not the clear disavowal required to actively graft an exclusion onto a claim. And it should not be taken at face value, because it was an implication. What science did, was they described the Shoshone system, described how it uses two numbers, two separate numbers, it processes the two numbers. That's what it does. It has a serial number, it has a random number, associated with the serial number, looks at the serial number, then goes and looks up to see if it's a random number, whether it is the one assigned to it or not. Science never suggested that Shoshone has a multi-part or multi-type number. It never suggested that. There could be no limitation on the claim on that basis. It couldn't, because it doesn't have multi-type numbers. It uses two numbers. What the district court authors said, was that somehow science implied that Shoshone uses the two numbers together. So what we have is an implication, a supposed implication, which is itself incorrect, as the Shoshone itself. Why in heaven's name one would think that science would incorrectly describe Shoshone, by implicit, by implication, describe Shoshone. And then, from that incorrect supposed implication, conclude that there's somehow a limitation to the claim. It does not follow. So what do you have with Claim 1? You have unique authorized information, which should not be limited. It is not to be only one thing or only another. You have comprised of, which should be open-ended, consistent with the patent description, and consistent with what ordinary skill in the art, including people such as the Council on Insider Art, in terms of patents. And you have the fact that it is undisputed, because we have shown it, that the first 14 digits of the 18, the first 14 elements of the 18 are, in fact, indisputable as a series. That does, again, lead, but it does say, also, that this is an instance where, as can happen, we can often infringe two claims in a patent. This is an instance where, because, even though you can detect the first 14, because they've also put in a random number at the end of the four, you can also say that it infringes Claim 13 and 14. So you can infringe both. Now, there was an issue raised in the briefing that somehow, with respect to this multi-part issue that we talked about, we used the words only. What we did is we said that Shoshone-McNally references recognize, just like the science folks recognize, that something else must be done than just using the numbers. So Shoshone had one thing that they did in terms of having two numbers, but Knight had something in terms of using algorithm testing. The science inventors came up with their something else, and that something else is what has proved successful. If I'm out of time, I did not get the grant. If you're out of time, we'll save you a little time. We'll ask you a few questions. Thank you. Good morning. Charles Hart, and I represent Valley Technologies Inc., formerly Alliance Gaming and Valley Gaming Systems. Mr. Worming several times said that the patent speaks of machinery or elements comprised of it. In fact, the patent's language, just so the record's clear, is unique authorized information, that disputed claim term, which is comprised of machinery I'm not sure it makes much difference to Mr. Worming's argument, but correctly speaking, the disputed term unique authorized information comes before the comprised of language. The reason I wanted to explain why the court's construction of the disclaimer in the re-examination is important is because it fits with what is in the specification of the 42 patent. The focus shouldn't be on what the intent was or how it should be read Shoshani at this point, but with the words that were actually used before the PTO. Before the PTO, Saez distinguished Shoshani by saying Shoshani teaches use of a pair of numbers as a multiple part identification system. Was he distinguishing Shoshani? Because I didn't see a rejection prior to this. I didn't see an attempt to distinguish it as prior art. He was not distinguishing it over an objection, but there was a re-examination that he in fact sought because he suggested that Shoshani was prior art that raised a significant question. And in his request for re-examination, he distinguished not only Shoshani, but several other prior art references. And the key wording there, that he's distinguishing Shoshani, said Shoshani doesn't teach either serial numbers alone or randomly selected numbers alone. And as we pointed out in the brief, that description of alone is put in by Saez and elsewhere in that request, added in brackets. So alone is obviously important to this inventor and it fits with his specifications. Specification teaches using this detective series instead of using a secret algorithm as McKnight teaches, instead of using the control number, pseudo-random portion of the overall number that Shoshani teaches. Instead of that, this inventor says, you can just use my detectable series alone. You can pick from things, forget about something being secret. In fact, from this inventor, detectable is the opposite of secret. Okay, so this is where I'm a little confused. Is your argument now that the disclaimer with regard to Shoshani of not either serial numbers or randomly selected numbers alone, I assume you're saying it's clear and unmistakable, because that's what our precedent says it has to be, clear and unmistakable. Clear and unmistakable doesn't have to be in the words, my disclaimer, I suppose. But there's no reference to any elements of the claims when they say that. In fact, that reference is to Shoshani. They're talking about what Shoshani discloses. I agree with you. By implication, it seems to me, that they're saying, well, Shoshani disposes this, not this. Well, why would they be saying not this unless it meant something to the patent? By implication, I agree with you, but it has to be clear and unmistakable, disavowal, according to our precedent. And that's, I'm a little fuzzy there. Well, I understand that there's no direct reference to elements of the claims, but there is the reference to serial numbers alone and randomly selected numbers alone and claim one of the patent and claim 13 of the patent that are issued here are exactly that, the serial or detectable series and the randomly selected. So those are exactly the elements that I think are being described and whose scope is being controlled by that disclaimer. And do you think the element in particular that's being controlled by this disclaimer is comprised of a detectable series language then? Because that is different from what the district court found. The district court found that this was a disclaimer relevant to the authorized... I think I'm saying what the district court said, which is it's a disclaimer relevant to the unique authorized information. And when it says the unique authorized information, certainly the patent language says unique authorized information can be comprised of a machine readable code elements according to a detectable series. I guess it would be something else the district court said it would be in the in-house space but it doesn't have to be machine readable. Yeah, it doesn't have to be machine readable at all because if you go outside the specifications of the use of the comprised logic, it doesn't mean anything at all. But the patent doesn't teach using that. And I think the way you can see why the understanding is going to be better perhaps is to look at what the specification does teach and what the specification teaches. Principally, maybe some percent of it probably is devoted to this system of putting a binary number on a poker chip that would be readable backwards, forwards, or upside down because it has certain properties that are discoverable through this Chinese formula. Suppose that we were to say that comprised of language was wrong. The district court got it wrong. It certainly would be saying who said comprising is open-ended. It would have said that over and over and over again. So there probably ought to be some presumption that a clear derivative of it is similarly open-ended. So just suppose, you can tell me if you want why, maybe not in this case, but apart from that, just suppose that we change that and only that. Does that mean that the summary judgment of non-infringement would still stand, though? Yes. The summary judgment of non-infringement would still stand because the basis of that decision is largely that this disclaimer of multi-part numbers controls the outcome. And that disclaimer coming years after the patent drafter used the word comprised of is the controlling factor in the case. So that because there are multiple part numbers in the value systems, there's no infringement. And more importantly than just multi-part numbers, it's the functions that the multiple parts. Your Honor alluded to the fact that the expert says if one part is random, the whole part's random. Whether or not the final four digits of the SDS are a pseudo-random number or simply the product of an algorithm, they are the factor that contributes to the uniqueness of the number. If you look at pages seven and eight of the district court's opinion, they lay out the table that says what each sub-part, there are five parts of the overall number, the last part of which is termed the re-identifying number. The first 14 that Sias argues is a detectable series. One can look in the record at A463 and see the tickets that Sias put into the record. You can stop at the 14th digit and see them go up, increment by one. That's not a way anybody would label something if they wanted to protect it from guaranteeing and maintain secrecy. They don't just label things one through three, whatever. With regard to Shoshani and the disclaimer, I'd like to ask another question, which is when they say not either serial numbers alone or randomly selected numbers alone, you would argue, I imagine, that randomly selected numbers alone are not what they're claiming in claim one. No, they're not. Right. I just, I do want to point out to you that with regard to Shoshani, they, in this re-examination disclosure, say Shoshani, and they put in parentheses claim one. And in the claim chart, which I was bothered that, unfortunately, we didn't have in the appendix, so I could have seen very clearly what they were comparing. Anyway, but the claim chart, I guess, also lists on the front page, it says it lists Shoshani as relevant to claim one. And the disclaimer they made is that Shoshani teaches the use of pairs of numbers, not either serial numbers or randomly selected numbers alone. Makes it a little hard for me to extrapolate that that's a clear disclaimer in claim one about randomly selected numbers. It makes it hard for me to say that they're saying their invention in claim one is randomly selected numbers alone, when no one has ever suggested that that's the case, that you can see that that's not the case. Well, if one looks at the way the, what the patent says about how secrecy and counterfeit protection is maintained, I think it's column 15. The patent demeans using secrecy or secret algorithms, things that can be lost or stolen. But it says that secrecy is maintained, I don't have it right in front of me, is maintained by the detectable series and the random secret selection of the detectable series. So the random selection is part of the invention that the science is teaching. The patent's invention is... It's claim 13, 14. Right. But not claim one. Well, how does claim one work as a detectable series? The detectable series is the Chinese one, but the patent clearly says don't use the numbers in the serial order, because everyone can figure out what the next one's going to be. So it says, if you need a million chips, of which 100,000 will be on the floor at any given time, authorize, get 18 million numbers, authorize a million of them, and then randomly select 10% of those, and that's what you use. So the random selection, and that's the only type of random selection that's really discussed in this classification at all, applies really to the system claimed in claim one as well as 13. So did you see any disavowal in prosecution history of numbers generated by a computer algorithm? I'm thinking of the discussion at 1361, 1362, of the... Is it McNamee or McKnight? Oh, wait. No, you may be right. What importance, if any, do you attach to that discussion there? What we argued before the district court with respect to this... You see, we disavowed a computer algorithm. Right, what it is, and that's what we said in the district court, was that it disavows not only the method that McNight teaches, but it disavows the secret algorithm. It says, my system doesn't use secret algorithms. You do use an algorithm. And we do. In both cases, in the slot management system and in the slot data system, the SDS and SMS, both involve using a computer algorithm. In fact, it's that algorithm in the SDS system, as I was, I think, just alluding to, that contributes to the uniqueness. Just how the language here was a bit more definitive than the language with respect to Shoshana. It's true, but McNight doesn't discuss the multi-part numbers. Shoshana does, and so there's a further disclaimer outscoped with Shoshana. I don't think there's any debate, though, that this is a disclaimer of computer algorithms. You're not saying the claims are limited to any particular algorithm. At least the details of any particular algorithm. The result of the algorithm, yes, but not how the algorithm is written or performed. Is that right? That's not an issue. No, no, it's not. In fact, I don't think that there's really any discussion in that about computer algorithms. There is in the reply brief a statement that says that we have not, that contests our statement that every hundredth, thousandth ticket would repeat. I think, again, I alluded to A463 in the record. You look at the tickets. It's not that you have how many machines you have in a museum. It's how many tickets come out of any given machine, and each ticket coming out of a given machine is incremented by one at that 14th digit, and it will eventually turn over, so there's no uniqueness to that number. There are 14 digits of that number, so that's the detectable series that is not unique authorized information. What makes it unique is the algorithm that they've disclaimed and that we follow, so we are really following what is denied in Trishani and not this system. They don't use an algorithm. No. The patent. No, the patent uses, the only algorithm, the mathematical formula explained in the patent is the one for choosing numbers that can be read in two directions because they can be the same backward and forward, and that, and the only reference to a computer in the specification is that a computer can be programmed with that formula and can tell you which is the next number that can be read backwards and forwards, but they don't use a computer to choose the number of however many digits that goes on to the object. Well, Dr. McKnight, do you mind if I redirect you for a second to the randomly selected language of things 13 and 14? The district court found that the teachings in the 148 patent, which is a distant relative, were informative. Well, I was a little troubled by that because it's a CIP of a CIP of, you know, it's many iterations away and the spec is radically different, but the one thing I found is that the 569 application, which is the same one that Shaul just referred you to, just two pages further than where he referred you, in particular on A1363 and A1364, that 569, which has an identical spec because it's the grandparent, straight continuations of the one at issue, actually has something which I think looks like extremely disclaiming language with regard to the secret algorithm that explains that McKnight uses a secret algorithm and then goes on to say by the very bottom of 1363 that McKnight's authorized numbers, which conform to a secret algorithm, are different from randomly selected information. And that seems to me to be more directly on point to the district court's holding but not necessarily the rationale that the 148 patent. Do you agree with that characterization? Well, I think the two are, you know, consistent. Right, they are consistent. What the district court is saying This one was a better one for him to cite. I'm ashamed that I didn't cite it this morning before you came to court. But in fact, they are consistent because the meaning of the term random to what he said in our brief, the meaning of the term random clearly is random. And in the 148, just as in the 148 patent file wrapper, the inventor takes to task the Zoltai reference because it uses pseudo-random interchangeably with random. So random obviously means random and in this case they're saying exactly the same thing. Something that conforms to an algorithm is not randomly selected information. Even though if not, it's not all algorithms. Any more questions for Mr. Kern? Thank you. Thank you very much. Do you want to start with the randomly selected part? Because I cut you off in the beginning, never let you talk about it and then asked the opponent questions about it. I feel bad and I didn't let you get to it first. That's fine. I'll refer to that and I'll start with what you just spoke about. In terms of the randomly selected, as we know by brief, it is a common meaning as even acknowledged by their own people and their own documents. Random includes pseudo-random. What does pseudo-random mean? Pseudo-random means it has the appearance of random. So basically you can't tell the difference between what it must do. Like generated by a secret algorithm. That's right. But that could be the ordinary meaning and I would agree with you probably that that's the ordinary meaning and that seems to be what everyone said. But this is the 569 application is the grandparent of the current model. Exactly. Exactly. What I'd like to refer you to is the previous two pages of that very discussion. Because what he's talking about here you need to understand what happens in McKnight. As I said earlier McKnight and Shoshana both decided they had to come up with something in addition to using particular numbers. What McKnight did was he said I'm not going to store the authorized information. I'm going to have an algorithm, a secret algorithm, which isn't  As our other expert said it doesn't actually come up with random numbers. That's a different issue that I'll cover for that in a second. That he says then when somebody presents a banknote or whatever for authentication I will look to see if the number fits the algorithm. Which is different from what we do. Which is we look just at the number there's no algorithm because we've stored the number does this match the one that we stored. That's what the discussion is on pages 1361 and 1362. Discussing what it is and why it is what this algorithm is. Not that it creates random or doesn't create random because if you read if you read McKnight you'll see that McKnight has various possibilities for his algorithm and if you look at them you can detect they're a series. But they are a particular algorithm. And they are a series. So that's what they're talking about. That's what they're trying to distinguish. Then when they come and the words here what he's talking about they're saying is look, what we do is not have this secret algorithm because the secret algorithm which is used for checking the number. That's the distinction being drawn here. Not that McKnight does or does not create random numbers because it depends on what algorithm McKnight happens to use. Whether he does or does not. And McKnight actually has in fact he points out in one of his algorithms one out of ten he can figure out immediately. In other words algorithms take one out of a hundred. So on the face of it they're not pseudo-random or random. And that's something our expert pointed out also in his declaration. Is that taking a look at McKnight even McKnight's algorithms on their face do not create pseudo-random numbers. So this statement being made here at 1363 and 1364 are correct on two bases. The first basis being that we're different operations here. McKnight is having this I would call algorithm testing approach. We don't do that. We simply have a random number that we then compare to what's in storage. It's not saying that we're random McKnight is not. Although in fact McKnight is not random as our expert said in his declaration. So I understand you write that the secret algorithm of McKnight you're saying cannot generate pseudo-random numbers. Our expert looks at it and says the way it's written it does not. But it's a hash that doesn't create and our expert says so. But passing that even besides that whether it could or could not is not what's being discussed here. What's being discussed here is also the fact that the distinction that is this algorithm testing that McKnight uses that's different. That's the difference. And that's when you have to read those two statements in the context of the two pages that come before which is describing the difference. So you notice in 1362 McKnight all his premise on the secret algorithm and mathematical testing of numbers read from the objects. It is in that context that the next two pages are being discussed. You can't take them out of context. Sure, but that sentence says McKnight teaches the use of a secret algorithm which you've underlined and mathematical performance testing. So that's two different things you're saying that McKnight teaches. Secret algorithm and mathematical performance testing then go on to say how the secret algorithm and are different from randomly selected information. So that's the part that I'm... I guess the part I'm looking for is the underlining of secret algorithm versus... On 1363 of the appendix. I see. Anyway, well, I think I understand your distinction. But the second point is what our expert put in is if you look at the McKnight algorithm it also doesn't come up with a pseudorandom number either. Thank you, Mr. Morgan. Thank you. And Mr. Hart, this is taking into consideration.